J. Walter Sinclair, ISB #2243
*Email: jwaltersinclair@hollandhart.com*
Sara Berry, ISB #7723
*Email: smberry@hollandhart.com*
HOLLAND & HART LLP
800 W. Main Street, Suite 1750
Boise, ID 83701-2527
Telephone: (208) 342-5000
Facsimile: (208) 343-8869

Ernest Summers (*pro hac vice pending*)
*Email: Ernie.Summers@faegrebd.com*
Kate E. Middleton (*pro hac vice pending*)
*Email: Kate.Middleton@FaegreBD.com*
FAEGRE BAKER DANIELS LLP
311 S Wacker Drive, Suite 4300
Chicago, IL 60606
Telephone: (312) 212-6500
Facsimile: (312) 212-6501

## IN THE UNITED STATES DISTRICT COURT, DISTRICT OF IDAHO
## SOUTHERN DIVISION

| | |
|---|---|
| ST. LUKE'S HEALTH SYSTEM, LTD. AND ST. LUKE'S MAGIC VALLEY REGIONAL MEDICAL CENTER, LTD., | Case No.: |
| Plaintiffs, | **COMPLAINT** |
| v. | |
| LEXINGTON INSURANCE COMPANY, AIG CLAIMS, INC. (for itself as adjuster and as claims agent for Lexington Insurance Company), COLUMBIA CASUALTY COMPANY | |
| Defendants | |

Now come the Plaintiffs, St. Luke's Health System, Ltd. ("SLHS") and St. Luke's Magic Valley Regional Medical Center. Ltd. ("SLMV") (Collectively "St. Luke's"), by and through their attorneys of record and for their Complaint against Defendants Lexington Insurance Company ("Lexington"), AIG Claims, Inc. ("AIGC"), and Columbia Casualty Company ("Columbia") state as follows:

## INTRODUCTION AND NATURE OF THE CASE

1.    This is an insurance coverage dispute for breach of contract and declaratory judgment, brought by St. Luke's to enforce the terms of the coverage it purchased for a claim

first made by Ashley Adams and her minor daughter (the "Minor Claimant"), during the first week in June, 2016 (the "Adams Claim").

2.      Two consecutive policies are in issue.  First, St. Luke's purchased "Claims Made" healthcare professional liability and excess professional liability insurance from Lexington in Policy # 6791689 (the "Lexington Policy"), a redacted true and correct copy of which is attached as Exhibit A hereto. The Lexington Policy was for the period from June 1, 2015 through June 1, 2016, but it expressly included an Automatic Extended Reporting Period ("AERP") extending coverage to Claims first made within 60 days after the expiration of the Policy Period if another policy did not "cover" them.

3.      St. Luke's did not renew the Lexington Policy, and the 60-day AERP became effective June 1, 2016.  (Ex. A.)

4.      The second policy at issue is a policy that St. Luke's purchased from Columbia for the period from June 1, 2016 through June 1, 2017 (the "Columbia Policy"), a redacted true and correct copy of which is attached as Exhibit B hereto.  Like the Lexington Policy, the Columbia Policy provides "Claims Made" coverage for healthcare professional liability claims.

5.      St. Luke's was never without insurance. The Columbia Policy Period started June 1, 2016, the same day that the base Lexington Policy Period expired, which was also the same day that the Lexington AERP automatically began providing coverage for Claims first made in the 60 days after June 1, 2016 if they were not covered by another policy.

6.      The Columbia Policy Period overlapped the Lexington AERP for 60 days; there was no gap in coverage.

7.      As set forth more fully below, Lexington requested and received written confirmation in early 2017 that the Columbia Policy does not cover the Adams Claim. (The

email string whereby Lexington requested it is attached hereto as <u>Exhibit L</u>, and the Columbia declination is attached as <u>Exhibit M</u>.)

8.      By its express terms, the Lexington AERP covers the Adams Claim.

9.      Both policies contained the same retroactive date of June 1, 1983 for a Medical Incident to be covered, and also required that the Claim arising out of the Medical Incident be first made during its Policy Period or any applicable extended reporting period.  Both policies specified June 1, 1983 as the "Retroactive Date" for Medical Incidents to have occurred ("Retroactive Date").  (Ex. A., Declarations Item 3; Ex. B. at 3.)

10.     The Medical Incident at issue in this case is alleged to have occurred on October 26, 2015 (the "Adams Incident"), which was after the Retroactive Date specified in both policies.

11.     A "Claim" for medical malpractice cannot be initiated against a medical provider in Idaho until the Pre-Litigation procedures of Idaho Code Chapter 10, Title 6 are followed, which include filing a Pre-Litigation Screening Panel Application ("Pre-Litigation Screening Application") with the Idaho Board of Medicine.

12.     In accordance with Idaho Code Chapter 10, Title 6, Ashley Adams, individually and as the natural mother of the Minor Claimant, through their attorneys, filed their Pre-Litigation Screening Application with the Idaho Board of Medicine on June 2, 2016.  (The Adams Pre-Litigation Screening Panel Application has been filed under seal as <u>Exhibit C</u>.)

13.     The next day, June 3, 2016, the Idaho Board of Medicine issued a Pre-Litigation Hearing Request for the Adams' potential malpractice suit, and the "Adams Claim" began.  (The Pre-Litigation Hearing Request has been filed under seal as <u>Exhibit D</u>.)

14.     The first Notice to St. Luke's of the "Adams Claim" was on June 6, 2016, when St. Luke's received the Board of Medicine's Pre-Litigation Hearing Request and a courtesy copy

of the Adams' Pre-Litigation Screening Application.   (Ex. C and Ex. D.)   Accordingly, the "Claim" was first made within the first week of the 60-day AERP for Claims under the Lexington Policy and in the first week of the Columbia Policy Period.

15.   Both insurers declined coverage, but for different reasons.  Lexington, through its affiliate and claims agent AIGC, argues that the coverage afforded by the Lexington AERP does not apply because the claim falls within an exception to the Lexington AERP coverage if other insurance "covers" it:

> A.  Automatic Extended Reporting Period
>
> > 3. The automatic extended reporting period, however, will not apply to claims if other insurance purchased by the Insureds covers them

(Ex. A at HPL 5-6, § V, ¶ A.3; Ex. J.).

16.   Columbia denies that its policy covers the Claim because it contends St. Luke's should have known of a "potential" claim before the relationship between Columbia and St. Luke's arose, even though no claim had been filed.  (Ex. M.)

17.   One of the insurers must be wrong regarding whether the Columbia Policy covers the Adams Claim.

18.   The plain and ordinary meaning of the exception to Lexington's AERP coverage is limited to Claims that are actually being covered by another policy, and St. Luke's asserts direct claims against Lexington for coverage.

19.   However, St. Luke's also asserts alternative claims against Columbia as a necessary party. If the Court were to accept Lexington's and AIGC's argument that Lexington is relieved of its AERP duties to defend and indemnify St. Luke's from the Adams Claim on the basis that the Columbia Policy "covers" the Adams Claim, it would necessarily mean that Columbia is liable.

20.     This case is essentially a dispute between Lexington and Columbia over which insurer must cover the Adams Claim, with the Insureds caught in the middle.

## THE PARTIES

21.     Plaintiff SLHS is a not-for-profit health system organized under and by virtue of the laws of Idaho. SLHS, is headquartered in Boise, Idaho and is the parent of plaintiff SLMV and other entities in the St. Luke's system.  SLHS is a citizen of Idaho.  SLHS is the Named Insured under the Lexington and Columbia policies and is a defendant in the underlying Adams lawsuit.

22.     Plaintiff SLMV is also an Idaho not-for-profit corporation headquartered in Twin Falls, Idaho.  SLMV is a citizen of Idaho and is the St. Luke's entity where the alleged medical incident took place.  SLMV is also Insured under the Lexington and Columbia policies and is a defendant in the Adams lawsuit.

23.     Defendant Lexington is a Massachusetts corporation headquartered in Boston. Lexington is citizen of Massachusetts and is a member of the American International Group ("AIG").  Lexington issued the Lexington Policy.

24.     Defendant AIGC is a Delaware Corporation headquartered in New York City.  On information and belief, AIGC is a Citizen of either Delaware or New York, is a member of the AIG group of companies, and is in the business of handling claims for AIG insurers.  AIGC made the decision to exclude coverage for the Adams Claim.

25.     Defendant Columbia is an Illinois corporation headquartered in Chicago, Illinois. Columbia is a citizen of Illinois.  On information and belief, Columbia is majority owned by Loew's Corporation.

## JURISDICTION AND VENUE

26.     Jurisdiction exists pursuant to 28 U.S.C. §1332, in that there is complete diversity of citizenship and the matter in controversy exceeds $75,000.00.  Venue is appropriate in this district pursuant to 28 U.S.C. §1391.

27.     Jurisdiction also exists pursuant to 28 U.S.C. §§2201-2202 in that there is an actual controversy regarding Insurers' obligations to pay Defense Expenses and Indemnify St. Luke's for any damages that may be awarded, and there is an actual controversy regarding St. Luke's claims for coverage under the Lexington and Columbia policies.

## THE ADAMS CLAIM AND INITIAL NOTICE TO THE INSURERS

28.     A serious medical incident is alleged to have occurred on October 26, 2015 in connection with the birth of the Minor Claimant at the SLMV hospital.  The alleged medical incident was after the June 1, 1983 Retroactive Date of both the Lexington and the Columbia Policies.

29.     No Claim was made against St. Luke's for the Adams Incident during the Lexington base Policy Period, but the Adams Claim was first made at the very beginning of the Lexington AERP on June 3, 2016.

30.     On June 6, 2016, St. Luke's received its first Notice of the Claim in the form of a courtesy copy of a Pre-litigation Hearing Request from the Idaho Board of Medicine dated June 3, 2016 (Ex. D), which enclosed a copy of Adams' Pre-Litigation Screening Application, dated June 2, 2016 (Ex. C).

31.     The next day, on June 7, 2016, St. Luke's sent initial notice of the Adams Claim to Lexington, but stated it did not know the date the Adams Claim had been filed with the Board of Medicine. (Exhibit E.)  Later the same day, St. Luke's sent an updated notice to Lexington confirming that the Adams Claim was received by the Board of Medicine on June 3, 2016.

COMPLAINT – Page 6

(Exhibit F.)

32.     St. Luke's will not restate the allegations contained in the Pre-Litigation Screening Application in this Complaint, but states that the Application generally asserts a claim against St. Luke's for medical negligence related to the birth of the Minor Claimant. (Ex. C.) Without admitting the truth or falsity of the allegations in the Pre-Litigation Screening Application, and for the purposes of this insurance dispute only, St. Luke's states that the statements contained therein speak for themselves.

33.     St. Luke's also gave notice to Columbia of the Adams Claim.  (Exhibit G.)

34.     The Adams initiated a lawsuit by filing a Complaint and Demand for Jury Trial on September 28, 2016. (Exhibit H.)

35.     An Amended Complaint and Demand for Jury Trial was filed on October 4, 2016. (Exhibit I.)

36.     The Adams lawsuit is ongoing, and St. Luke's is providing its own defense.

37.     Neither Lexington nor Columbia is providing a defense for St. Luke's related to the Adams Claim.

**THE LEXINGTON POLICY AND LEXINGTON'S COVERAGE DECLINATION**

38.     Without admitting the truth of the allegations, St. Luke's states that the Adams Claim is within the terms of coverage of the Lexington Policy.

39.      Lexington is, therefore, in breach of the Lexington Policy.

40.     Lexington, through AIGC, declined coverage in writing on October 24, 2016. (Exhibit J.)

41.     In the first paragraph of the letter, AIGC stated that it is the adjuster for the Adams Claim and that all future correspondence should be directed to them. (Ex. J.)

42.     Lexington, through AIGC, stated only one basis for declining coverage: that the Columbia Policy "covers" the Adams Claim. (Ex. J.)

43.     Lexington, through AIGC, purported to reserve rights to assert additional defenses or modify its coverage position, but to date, it has asserted only that the AERP does not provide coverage because the Columbia Policy covers the Adams Claim.  (Ex. J at 7.)

44.     Lexington's and AIGC's stated basis for declining coverage under the Healthcare Professional Liability Coverage Part was based on a mistaken understanding of the facts. Lexington and AIGC incorrectly assumed that Columbia accepted tender of the Adams Claim:

>  According to our records, St. Luke's was no longer insured by Lexington after the Subject Policy expired on June 1, 2016. Pursuant to subsection 3 above, the automatic extended reporting period does not apply if other insurance purchased by St. Luke's covers the claim or would have covered the claim had its limits of insurance not been exhausted. **Based on the information received to date, St. Luke's current insurer has accepted tender of the Subject Claim. Accordingly, the automatic extended reporting period does not apply because other insurance purchased by St. Luke's does cover the claim.**

(Ex. J at 5)  (emphasis added).

45.     Through emails beginning in January 2017, and continuing through March 2017 St. Luke's corrected Lexington's misunderstanding that Columbia had accepted the Adams Claim and advised that Columbia was not accepting coverage.  (Ex L.)

46.     And, at Lexington's request, Columbia provided a written declination on January 27, 2017 (Ex M), which St. Luke's forwarded it to Lexington through AIGC on February 2, 2017 (Ex L).

47.     Thus, Lexington has had actual knowledge since February 2017, that Columbia declined the tender and is not covering the Adams Claim.  (Ex. L; Ex. M.)

48.     Lexington responded on February 14, 2017 asking for a copy of the Columbia

Policy, which St. Luke's provided on March 20, 2017.  (Ex. L.)

49.     Lexington, through AIGC, wrote again on April 4, 2017, confirming its denial of coverage:

> The purpose of this letter is to reiterate our position that there is no potential for coverage for the Subject Claim under the Lexington Policy and that [Columbia] has the obligation to defend and indemnify St. Luke's.
>
> (Exhibit K at 1.)

50.     Lexington and AIGC did not add any new bases for declining coverage under the Lexington Policy (Ex. K at 1-2), but continued to argue that Columbia covers the claim.

51.     Instead, Lexington, through AIGC, took a new position that it did not owe coverage to St. Luke's because Columbia *should* cover the Adams Claim (Ex. K at 3-5), rather than denying it owed coverage because it believed Columbia had accepted the tender and *is* providing coverage for the Adams Claim (Ex. J).

52.     In the "Declination of Coverage" discussion of the October 24, 2017 Declination Letter (Ex. J at 3-7), and in the "Appendix of Selected Policy Language" attached thereto, Lexington and AIGC admit the relevant policy terms establishing coverage under the Healthcare Professional Liability Coverage Part, including

> a.   the Insuring Agreement for Healthcare Professional Liability (Ex. J at 3);
>       the Insuring Agreement for Bodily Injury to Patients (Ex. J at 3); and
>
> b.   the definitions of "medical incident", "bodily injury", and "claim" (Ex J at 4).

53.     Lexington admits that the Lexington Insuring Agreement for Healthcare Professional Liability coverage provides as follows:

> I.     INSURING AGREEMENT

Healthcare Professional Liability

**We** will pay those sums in excess of the Retained Limit set forth in Item 5(a) of the Declaration Page and as described in Section IV., Limits of Insurance, F. Retained Limits, that you become legally obligated to pay others as damages resulting from a **medical incident** arising out of **professional services** provided by any **Insured**. The amount we will pay for damages is limited as described in Section IV., Limits of Insurance. The medical incident must take place on or after the retroactive date and before the end of the **policy period**. A **claim** for a **medical incident** must be first made against an **Insured** during the **policy period** or the extended reporting period, if applicable. A **claim** for a **medical incident** must be made within the coverage **territory**.

No other obligation to pay sums or perform acts or services is covered unless explicitly provided for under Section II. DEFENSE AND OTHER PAYMENTS UNDER THIS POLICY – ALL COVERAGE PARTS of the GENERAL POLICY PROVISIONS AND CONDITIONS.

(*See* Ex. J, Lexington's Appendix of the Lexington Policy Terms.)

54.     Lexington admits that it has the right and duty to defend any suit seeking damages

covered by the terms and conditions of the Lexington Policy:

II.     COVERAGE DEFENSE AND OTHER PAYMENTS UNDER THIS POLICY – ALL PARTS

A.     We shall have the right and duty to defend any suit seeking damages covered by the terms and conditions of this policy when:

1.     The applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other underlying insurance providing coverage to the Insured have been exhausted by payment of judgments or settlements to which this policy applies; or

2.     Damages are sought for bodily injury, property damage, personal injury or advertising injury covered by this policy but not covered by any underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the Insured.

B.     When we have the duty to defend any suit, we will defend such suit against the Insured for a covered claim seeking damages

on account of a medical incident, bodily injury, property damage, personal injury or advertising injury even if such claim or suit is groundless, false or fraudulent.  We have the right to investigate, defend, appoint an attorney to defend, and settle the claim or suit as we deem expedient.

C.    In addition to the Limits of Insurance applicable to this policy, we shall pay, with respect to any suit we defend, the following, to the extent that they are not included in the underlying policies listed in the Schedule of Underlying Insurance or in any other insurance providing coverage to the Insured:

1.    All expenses we incur including defense costs.

(*See*, *id*.)

55.    Lexington admits that the Pre-Litigation Screening Request filed against St. Luke's on June 3, 2013, was a claim and that it was reported to Lexington on June 6, 2016.  (Ex J at 5).

56.    Lexington admits the terms of the Lexington Policy's AERP as follows:

1.  If this Coverage Part is canceled or non-renewed for any reason other than non-payment of premium, and if the Optional Extended Reporting Period Endorsement is not purchased, then **we** will provide an automatic extended reporting period of sixty (60) days, starting with the end of the **policy period**, during which **claims** arising out of **medical incidents** which take place on or after the retroactive date stated on the Declarations Page but before the end of the **policy period** may be first made.

2. The automatic extended reporting period does not extend the **policy period** or change the scope of coverage provided. Any **claim** first made during the automatic extended reporting period shall be deemed to have been first made on the last day of the **policy period**.

3. The automatic extended reporting period, however, will not apply to **claims** if other insurance purchased by the **Insureds** covers them.

4. The aggregate limits of insurance applicable to this Coverage Part shall not be increased or reinstated for the automatic reporting period.

(*Id*. at 5, *citing* Lexington Policy Excess Healthcare Professional

Liability Coverage Part, Section V.A.)

57.    The Adams Claim is within the Insuring Agreement of the Lexington Policy because:

    a.  it arises from a Medical Incident after the Retroactive Date;

    b.  it falls squarely within the Lexington AERP; and

    c.  Lexington is contractually obligated to deem the Adams Claim to have been made on the last day of the Lexington base policy period.

58.    Under the Lexington Policy, Lexington must provide defense and indemnity for St. Luke's related to the Adams Claim.

### THE COLUMBIA POLICY

59.    St. Luke's purchased policy # HMU 4032243446-0 (the "Columbia Policy") for the Policy Period June 1, 2016 through June 1, 2017. (Ex. B.) Like the Lexington Policy, the Columbia Policy provided both Professional Liability coverage and Umbrella Liability coverage.

60.    Like the Lexington Policy, the Columbia Policy provided Healthcare Professional Liability ("HPL") coverage on a "Claims Made" basis for claims first made and reported during the Policy Period or any applicable extended reporting period that arose out of a covered medical incident after the specified "Retroactive Date" set forth in each policy.

61.    Like the Lexington policy, the Columbia Policy specified June 1, 1983 as the Retroactive Date for claims under the HPL coverage.   (Ex. B, "Declarations," Form CNA72897XXC (03-2014) at page 3 of 57; *see also* Ex. B, "Declarations Amendatory Endorsement" Form No CNA72903XX (04-2013) at Item II.)

62.    The Adams Claim was first made during the Columbia Policy Period.

63.    There was no claim made arising out of the Adams Incident prior to the inception of the Columbia Policy.

64.     Notice of the Adams Claim was given to Columbia. (Ex. G.)

65.     Columbia declined coverage for the Adams Claim for very different reasons than Lexington.

66.     The Insuring Agreement for Healthcare Professional Liability coverage in the Columbia Policy provides:

> **COVERAGE**
>
> **A.     Insuring Agreement**
>
> **Subject** to the section entitled **LIMITS OF INSURANCE**, the Insurer will pay on behalf of the **Insured** those **damages** in excess of the **applicable underlying limit** that an **Insured** becomes legally obligated to pay as a result of a **claim**, including a **professional liability claim**, alleging **injury** and caused by an **incident**.   The Insurer will pay such **damages** only upon exhaustion of the **applicable underlying limit**.  (Ex. B, Form No. CNA72888XX (10-2013) at 1.)

67.     Unlike the Lexington Policy, the Columbia Policy does not have the right and duty to defend a Claim, but it has the obligation to pay defense costs incurred by the Insured, and may take over the defense or associate in the defense at its discretion as follows:

> **DEFENSE PAYMENT AND RELATED DUTIES**
>
> **A.**      No **Insured** shall admit liability, consent to any judgment, agree to any settlement or make any settlement offer which is reasonably likely to involve this policy without the Insurer's prior written consent, such consent not to be unreasonably withheld. The **Insureds** agree that they shall not knowingly take any action that increases the Insurer's exposure for **damages** or loss under this policy.
>
> **B.**      The Insurer may, at the Insurer's sole discretion and at the Insurer's own cost, elect to participate in the investigation, settlement or defense of any **claim** against any of the **Insureds** for matters covered by this policy even if the **applicable underlying limit** has not been exhausted.
>
> **C.**      Where there is **underlying insurance** (including a **self-Insured retention**) or **unscheduled underlying insurance**, the

**Insured Entity**, and not the Insurer, has the duty to defend **claims**. The **Insured Entity** shall exercise its best judgment in adjusting **claims** and endeavor to resolve such claims in a fair, equitable, timely and cost effective manner in accordance with the standards set forth in the National Association of Insurance Commissioners' Unfair Claims Settlement Practices Act., as it may be amended from time to time.

D.      If the obligation of all **underlying insurers** (or the **Insured Entity**, where there is a **self-Insured retention**) either to investigate or defend the **claim** or pay the cost of such investigation or defense, ceases solely through exhaustion of all **applicable underlying limits** through payment of a combination of any covered expenses, damages, settlements or judgments for **injury**, then the Insurer will, at the Insurer's option, either:

1.      assume the investigation or defense of the **Insured** against **claims**; or

2.      reimburse the **Insured** for **defense costs** it incurs in the investigation or defense of such **claims**.

However, all **defense costs** incurred in connection with such **claims** are included within and erode the Limits of Insurance.

E.      The Insurer will have the option to either investigate or defend a **claim** or to reimburse an **Insured** for **defense costs** in connection with a **claim** where the **claim** is not covered under the **underlying insurance** or **unscheduled underlying insurance**, but which seeks or involves **damages** because of **injury** otherwise covered under this policy.

F.      Where the Insurer has opted to investigate or defend a **claim**, the Insurer will do so even if the allegations of a **claim** are groundless, false, or fraudulent, but only until the Insurer makes payment or offers to pay or deposit in court that part of a judgment not exceeding the Insurer's limit of liability.  The Insurer shall also have the sole right to make settlement of a **claim** as the Insurer deems expedient.

G.      If a **claim** made against the **Insureds** includes both covered and uncovered matters or if a **claim** is made against **Insureds** who are extended coverage therefore and others who are not extended coverage therefore, the **Insureds** agree that there must be an allocation between Insured and uninsured loss.  The Insureds and the Insurer shall exercise their best efforts to agree upon a fair and proper allocation, based on the relative legal and financial

exposures, between Insured loss and uninsured loss.

(Ex B., Form No. CNA72888XX (10-2013) at 2-3.)

68.   The Columbia Policy contains a limitation on the Insuring Agreement obligations for incidents prior to the coverage relationship:

**2.   Claims-Made Coverage**

Where the **primary policy** or **self-insured retention** is on a claims-made basis,

a.   such **claim** is first made against an **Insured** during the **policy period** or during the **extended reporting period**, if any, and is reported to the Insurer in accordance with the section entitled **CONDITIONS**, the paragraph entitled **Notice of Claims and Potential Claims**; and

b.   prior to the effective date of the **coverage relationship**:

    i.   no **authorized Insured** knew or should have known of a claim or **potential claim**; or

    ii.   no **Insured** had given notice to a prior insurer of any **related claim**.

c.   prior to the effective date of the **coverage relationship**, no **authorized Insured** knew:

    i.   that any **bodily injury** (other than covered **bodily injury** arising out of the rendering of **professional services)** or **property damage** had occurred.  If any **authorized Insured** knew, prior to the **coverage relationship**, that any **bodily injury** or **property damage** had occurred, then any continuation, change or resumption of such **bodily injury** or **property damage** during or after the **coverage relationship** will be deemed to have been known prior to the coverage relationship.

    ii.   that any offense giving rise to personal and advertising injury had occurred, in whole or in party, and

d.   the **incident** occurred on or after the Retroactive Date, if any, shown in the **DECLARATIONS**.

3.      For purposes of paragraphs **1.** and **2.** above, an **authorized Insured** will be deemed to know:

a.      that such **bodily injury** or **property damage** occurred, at the earliest time when such **authorized Insured**:

i.      reports the **bodily injury** or **property damage** to the Insurer or any other Insurer:

ii.     receives a claim arising out of the bodily injury or property damage; or

iii.    becomes aware by any other means that the **bodily injury** or **property damage** has occurred or has begun to occur;

b.      that such offense had occurred, on the date of the first utterance or dissemination or, if there is no utterance or dissemination on the first date of the activity giving rise to a **claim**.

(Ex. B, Form No. CNA72888XX (10-2013) at 1-2.)

69.     The Columbia Policy defines "coverage relationship" as:

**Coverage relationship** means that period of time that begins on the Effective Date of the first policy issued by the Insurer to the **First Named Insured** of which this policy is a renewal in a consecutive series of renewals and ends on the cancellation date or nonrenewal date of the last such consecutive renewal policy issued by the Insurer to the **First Named Insured**, where there has been no gap in coverage. (Ex B, Form No. CNA72888XX (10-2013) at page 24 of 34.)

70.     The Columbia Policy defines "Authorized Insured" as:

**Authorized Insured** means any **executive officer**, member of the **Named Insured's** human resources, risk management or in-house general counsel's office, or any **employee** authorized by the **Insured Entity** to give or receive notice of a **claim**.  (Ex B, Form No. CNA72888XX (10-2013) at 24.)

## COUNT I

## BREACH OF INSURANCE CONTRACT BY LEXINGTON AND AIGC

71.     Plaintiffs restate and reallege paragraphs 1 – 70 above, as if fully restated herein.

72.     The Lexington Policy (Ex. A) constitutes a binding insurance contract.

73.     St. Luke's has satisfied its contractual obligations under the Lexington Policy and is not in breach.

74.     The Adams Claim arose out of a Medical Incident that occurred after the Retroactive Date of the Lexington Policy.

75.     The Adams Claim was first made during the AERP of the Lexington Policy.

76.     The terms of the AERP do not excuse Lexington from its obligations to provide defense and indemnity to St. Luke's under the Lexington Policy.

77.     In particular, Lexington is not relieved of its obligations under the AERP based on Lexington's argument that the Columbia Policy should cover the Adams Claim.

78.     St. Luke's gave timely notice of the Adams Claim to Lexington and AIGC.

79.     The Adams Claim is within the Healthcare Professional Liability Insuring Agreement of the Lexington Policy.

80.     Lexington has the obligation to defend and indemnify St. Luke's from the Adams Claim, but Lexington, through AIGC, has refused to do so.

81.     Lexington's and AIGC's failure to provide defense and indemnity to St. Luke's for the Adams Claim is not excused.

82.     Lexington's breach caused damages to St. Luke's, which damages are continuing.

83.     The amount of damages caused by Lexington's breach exceed $75,000.00 and they are continuing.

## COUNT II

## DECLARATORY JUDGMENT AS TO LEXINGTON AND AIGC REGARDING DUTY TO DEFEND

84.     Plaintiffs restate and reallege the allegations of paragraphs 1 – 70 above, as if

COMPLAINT – Page 17

fully restated herein.

85.    There is an actual substantial controversy between St. Luke's, and Lexington and AIGC regarding Lexington's coverage obligations to St. Luke's for the Adams Claim.

86.    The interests of Lexington and AIGC are adverse to the interests of St. Luke's.

87.    The Policy (Ex. A) constitutes a binding insurance contract.

88.    St. Luke's has satisfied its contractual obligations under the Lexington Policy and is not in breach.

89.    The Adams Claim arose out of a Medical Incident that occurred after the Retroactive Date of the Lexington Policy.

90.    The Adams Claim was first made during the AERP of the Lexington Policy.

91.    The terms of the AERP do not excuse Lexington from its obligations to provide defense and indemnity to St. Luke's under the Lexington Policy.

92.    In particular, Lexington is not relieved of its obligations under the AERP based on Lexington's argument that the Columbia Policy should cover the Adams Claim.

93.    St. Luke's gave timely notice of the Adams Claim to Lexington and AIGC.

94.    The Adams Claim is within the Healthcare Professional Liability Insuring Agreement of the Lexington Policy.

95.    Lexington has the obligation to defend and indemnify St. Luke's from the Adams Claim, but Lexington, through AIGC, has refused to do so.

96.    Lexington's and AIGC's failure to provide defense and indemnity to St. Luke's for the Adams Claim is not excused.

97.    Lexington's breach caused damages to St. Luke's, which damages are continuing.

98.     The interests are of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

99.     The amount in controversy exceeds $75,000.00.

## COUNT III (PLED IN THE ALTERNATIVE)

## DECLARATORY JUDGMENT THAT COLUMBIA HAS A DUTY TO DEFEND

100.    Plaintiffs restate and reallege the allegations of paragraphs 1 – 70 above, as if fully restated herein.

101.    In the event that the Court were to conclude that Lexington is excused from its obligations to defend and indemnify St. Luke's from the Adams Claim under the Lexington AERP because the Columbia Policy "covers" the Adams Claim as Lexington asserts, it would necessarily follow that the Columbia, under the Columbia Policy, must defend and indemnify St. Luke's from the Adams Claim.

102.    There is an actual substantial controversy between St. Luke's and Columbia regarding Columbia's coverage obligations for St. Luke's for the Adams Claim.

103.    The interests of Columbia are adverse to the interests of St. Luke's.

104.    The Policy (Ex. B) constitutes a binding insurance contract.

105.    St. Luke's has satisfied its contractual obligations under the Columbia Policy and is not in breach.

106.    The Adams Claim arose out of a Medical Incident that occurred after the Retroactive Date of the Columbia Policy.

107.    The Adams Claim was first made during the Columbia Policy period.

108.    Columbia has declined to pay defense and indemnity for St. Luke's for the Adams Claim.

109.    The amount of the damages caused by Columbia's failure to pay defense and indemnity exceed $75,000.00 and they are continuing to increase.

110.    The interests are of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

111.    The amount in controversy exceeds $75,000.00.

### RELIEF REQUESTED AGAINST LEXINGTON AND AIGC

WHEREFORE, St. Luke's respectfully prays that this Court enter an order granting St. Luke's the following relief:

A.    Enter a judgment for declaratory relief declaring that Lexington and AIGC are not relieved from the defense and indemnity obligations barred from denying St. Luke's defense and indemnity for the Adams Claim under the terms of the  AERP because Columbia is not covering the Adams Claim;

B.    Award damages in favor of St. Luke's requiring Lexington to reimburse the past Defense Costs already incurred by St. Luke's;

C.    Enter a judgment for declaratory relief requiring Lexington to defend and indemnify St. Luke's from all liability for the Adams Claim going forward.

D.    Award such supplemental and other relief as this Court finds just and proper.

### ALTERNATIVE RELIEF REQUESTED AGAINST COLUMBIA

WHEREFORE, St. Luke's respectfully prays that this Court enter an order granting St. Luke's the following relief in the event that the Court concludes Lexington is not liable for St. Luke's defense and indemnity under the AERP because the Colombia Policy "covers" the Adams Claim:

A.    Enter a judgment for declaratory relief declaring that Columbia must pay St.

Luke's defense and indemnity for the Adams Claim under the Columbia Policy;

B.      Award such supplemental and other relief as this Court finds just and proper.

March 12, 2018

Respectfully submitted,

s/ J. Walter Sinclair

J. Walter Sinclair
jwsinclair@hollandhart.com
HOLLAND & HART LLP
800 West Main Street, Ste. 1750
Boise, ID 83702
(208) 342-5000

Ernest Summers (*pro hac vice pending*)
ernie.summers@FaegreBD.com
Kate E. Middleton (*pro hac vice pending*)
kate.middleton@FaegreBD.com
FAEGRE BAKER DANIELS LLP
311 S Wacker Drive, Suite 4300
Chicago, IL 60606
(312) 212-6500

*Attorneys for St. Luke's Health System,
Ltd. and St. Luke's Regional Medical
Center, Ltd.*

## CERTIFICATE OF SERVICE

A copy of the foregoing Complaint will be served via process server on each named Defendant.

/s/J. Walter Sinclair

J. Walter Sinclair
jwsinclair@hollandhart.com
HOLLAND & HART LLP
800 West Main Street, Ste. 1750
Boise, ID 83702
(208) 342-5000
*Attorneys for St. Luke's Health System, Ltd.*
*and St. Luke's Regional Medical Center, Ltd.*